# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. JEFFERY BAILEY, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | 11 C 7613 |
| DAVE REDNOUR, Warden of Hill Correctional Facility,[1] | ) ) ) ) | Judge John Z. Lee |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Jeffery Bailey petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), challenging his conviction for first-degree murder based on ineffective assistance of his trial counsel as well as denial of due process with regard to his post-conviction proceedings. For the reasons set forth in this Memorandum Opinion and Order, the Court denies the petition.

## Factual Background[2]

In the evening of July 9, 1999, Bailey stabbed his girlfriend, Lenorris Jones-Watson, to death in their apartment in Blue Island, Illinois. Afterwards, he called 911. When the 911 dispatcher

---

[1] The Court substitutes Stephanie Dorethy for the original named Respondent, Dave Rednour. Rule 2(a) of the rules governing Section 2254 habeas cases provides that the proper party respondent in a habeas case brought by an incarcerated petitioner is the state officer having custody of the petitioner. *See Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005). Because Stephanie Dorethy is now Warden of Hill Correctional Center, the Court substitutes her as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 2254(e)(1), the state court's recitations of fact are presumptively correct in habeas proceedings. *Sumner v. Mata*, 449 U.S. 539, 547 (1981). Because Petitioner has not attempted to rebut the presumption with clear and convincing evidence, see 28 U.S.C. § 2254(e)(1), the Court adopts the factual account as provided in *People v. Bailey*, No. 1-02-2550, slip op. at 2-7 (Ill. App. Ct. Oct. 24, 2003) (*see* Resp't's Ex. D).

asked what the problem was, Bailey responded, "I stabbed my girlfriend," gave the address of the apartment, and added, "I think she dead." Then Bailey told the dispatcher to get off the phone because he wanted to call his lawyer. Despite Bailey's request, the dispatcher stayed on the line, and Bailey could be heard saying, "[Y]ou are going to die" and "I am going to f***ing jail for life."

At Bailey's bench trial, several witnesses testified for the prosecution. Among them were the victim's sister, the arresting officer, a detective, a crime scene investigator, a forensic scientist, and a forensic pathologist.

Benita Jones, the victim's sister, testified that she spoke with the victim via telephone for approximately fifteen to eighteen minutes beginning at 7:33 p.m. that evening. During the telephone conversation, Jones heard the victim say, "Jeff, why are you trying to hurt me? I'm not trying to hurt you." About ten to fifteen seconds later, Jones heard a pounding and a stamping sound and the phone was hung up. When Jones called back, Bailey answered and said, "Benita, don't f*** with me." Jones never heard from her sister again.

Based upon the 911 call, Blue Island Police Officer Henehan was dispatched to the apartment at 7:54 p.m. Henehan testified that Bailey opened the apartment door and said, "She's dead. I stabbed her." Henehan entered the apartment, saw the victim lying on the floor with her chest covered in blood, arrested Bailey, and read him his *Miranda* rights. According to Henehan, Bailey then stated, "[W]e could have had it all, we were so close. That women were so powerful and he didn't realize he was so weak. And that they push you and they push you, until they get what they want. And that he'd given her everything." Later, as they were arriving at the police station, Bailey told Officer Henehan, "Well I guess I'll let them do what I have coming to me. At least I did the right thing by calling y'all."

2

Detective Jeff Werniak was also present at the scene of the crime and testified that, after Bailey was read his *Miranda* rights, Bailey "stated that the victim had hurt him real bad inside. They were supposed to get married. She had not been home for a couple days. She had been screwing around, according to him. And from there he stated he stabbed her and then confessed on the phone."

Pamela Murray, an Illinois State Police investigator, testified that, when she arrived at the site, she noticed that a box fan, a picture, and a dining room chair had been overturned, the stem of a plant had been broken, the telephone receiver cord had been stretched as far as possible, and two knives covered in reddish-brown stains had been found. In addition, Murray testified that she examined Bailey that night and observed that Bailey had two abrasions on his lower right arm measuring ten millimeters and three millimeters in length and reddish-brown stains all over his palms. Murray did not notice any abrasions on his chest, back, or hands. Murray also testified that she examined the victim and saw five stab wounds around the breast area, a stab wound to the face, a wound on her right side, a wound on her left palm, and broken fingernails on her right hand.

Deborah Minton, a forensic scientist who specializes in DNA analysis, testified that the DNA found on the two bloody knives matched that of the victim. However, the DNA found on the knives did not match Bailey's DNA.

Dr. Barry Lifschultz, a forensic pathologist, testified at trial that he had performed an autopsy of the victim. Lifschultz observed nine stab wounds, including one in the right chest, five in the left chest area near the victim's heart, one in the mid back which penetrated the spine, one on the left back, and one on the right side of the victim's face. In addition, Lifschultz noted one defensive knife wound on the palm of the victim's left hand.

3

After the prosecution rested its case-in-chief, Bailey testified on his own behalf. Bailey said that on the day he stabbed Lenorris, they had had a disagreement over financial matters. At the time, Lenorris was speaking to her sister, Benita, over the telephone. When Bailey heard Lenorris discuss his personal financial matters with Benita, he became upset and walked toward Lenorris as she ran into the kitchen. Bailey picked up the telephone and told Benita, "[L]eave us the f***alone." After he hung up the phone, he turned around and saw that Lenorris had a knife in her hand. According to Bailey, he said, "What in the Hell are you doing with that knife? Give me the knife, Lenorris." To which she replied, "Kiss my a**." Bailey stated that he tried to get the knife away from her, but she was swinging the blade around and, in doing so, nicked her own face. He then grabbed the knife away from her and threw the knife into the kitchen sink, while she was behind him yelling, "I hate you. I hate you." According to Bailey, when he turned around, Lenorris had a second knife in her hand. Bailey grabbed her and pushed her out into the living room, and they struggled and fought over the second knife. Bailey stated that he was angry and upset that Lenorris had the second knife and had tried to hurt him. He managed to get the second knife away from Lenorris. "And the next thing I know, I was stabbing Lenorris," Bailey said. He then ran to the telephone and called 911.

Bailey testified that he is six feet tall and weighs 225 pounds. He also stated that he has been a boxer all of his life. He denied that Lenorris, while on the phone with her sister, ever said to him, "Jeff, why are you trying to hurt me? I'm not trying to hurt you."

### **Procedural Background**

Bailey was charged with the first-degree murder of Lenorris Jones-Watson. In 2002, after a bench trial, he was found guilty of first-degree murder, and the court sentenced him to thirty-four years of imprisonment. (Resp't's Ex. Q, 8/6/02 Sentencing Hr'g at Q-43.)

A. The Direct Appeal

On direct appeal, Bailey raised three arguments. First, he contended that his conviction for first-degree murder should be reduced to second-degree murder because evidence presented at trial satisfied both the "imperfect self-defense" and "heat of passion" mitigating factors. Second, he asserted that the trial court applied the wrong legal standards when it determined that no mitigating factors applied. Third, he argued that the trial court erroneously admitted as an excited utterance, Lenorris' hearsay statement, "Jeff, why are you trying to hurt me? I'm not trying to hurt you."

The state appellate court affirmed the conviction. Addressing Bailey's first contention, the appellate court held that the conviction could not be reduced to second-degree murder because Bailey had not proven by a preponderance of the evidence that any mitigating factor applied. The appellate court pointed out that, at trial, Bailey did not present any evidence to support the applicability of the "imperfect self-defense" mitigating factor. Resp't's Ex. A, *People v. Bailey*, slip op. at 9 (stating that Bailey's trial counsel argued that Bailey "has never made a claim of self defense").

Furthermore, the appellate court explained that, in order for the "heat of passion" mitigating factor to apply, Bailey needed to prove that he had not instigated the fight and that his retaliation was not disproportionate to any provocation on the part of Lenorris. Although Bailey had testified that it was Lenorris who first approached him with a knife, the appellate court pointed to evidence that belied this testimony. For example, the fact that Lenorris had asked Bailey why he was hurting her when she was not trying to hurt him was evidence that it was Bailey, not Lenorris, who instigated the fight. Furthemore, Lenorris's broken finger nails and defensive-type wounds tended to show that she was not the instigator. In addition, the fact that the first knife was covered with Lenorris's blood was inconsistent with Bailey's testimony that Lenorris had simply nicked her own cheek as he pulled the

knife away from her. The amount of Lenorris's blood on the first knife also contradicted Bailey's testimony that Lenorris was able to walk around the kitchen to look for the second knife. Lastly, Bailey's admission that he thought Lenorris had not been home for a couple of days because she was out "screwing around" created a reasonable inference that, instead of being attacked by Lenorris, Bailey had acted out of jealousy, which was insufficient as a matter of law to constitute provocation.

The appellate court also rejected the other issues raised by Bailey on direct appeal. It held that the trial court had applied the proper standards in assessing the mitigating factors, the burden of proof, and the requirement that the defendant establish a mitigating factor by a preponderance of the evidence. It also held that the trial court did not abuse its discretion when it admitted Lenorris's statement as an excited utterance because the evidence showed that she had made the statement within minutes of being stabbed to death by Bailey.

Bailey petitioned for leave to appeal the appellate court's order to the Illinois Supreme Court, raising the same issues. *See* Resp't's Ex. G, *People v. Bailey*, No. 97519. The Illinois Supreme Court denied the petition. *See* Resp't's Ex. H, *People v. Bailey*, No. 97519 (Ill. Jan. 28, 2004).

### B.   Post-conviction Proceedings

Bailey then filed a post-conviction petition and an amended post-conviction petition with the help of appointed counsel. *See* Pet. Writ Habeas Corpus at 3. He argued that his trial counsel provided ineffective assistance when he (1) chose a "heat of passion" mutual-combat mitigation defense over Bailey's objections; (2) ignored Bailey's claims that he acted in self-defense;[3] (3) did

---

[3] During closing statements, Bailey's trial attorney stated, "This is not a case of self-defense. I acknowledge that. It is not a case of self-defense at all." Resp't's Ex. B, Trial Tr. at L48. Counsel added:

> And Jeff has never made a claim that this was self defense. But under the second mitigating factor, an individual when he does this homicidal act is acting under sudden, intense passion, which clearly is here. Which is the

6

not present a psychiatric expert in mitigation; (4) did not make an opening statement or develop a theory of innocence; (5) did not cross examine the 911 operator, Paulette Sczecina; and (6) did not challenge the admissibility of the 911 tape. Bailey also argued that his counsel on direct appeal had provided ineffective assistance because he did not argue on direct appeal that Bailey's trial counsel was ineffective for conceding his guilt. Lastly, he argued that the trial court relied on incompetent evidence by admitting the 911 tape.

At a post-conviction hearing, the circuit court granted the State's motion to dismiss Bailey's post-conviction petition. The circuit court held that Bailey had failed to satisfy the requirements to demonstrate ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), and his allegations were not supported by independent affidavits, records, or other evidence.

With the aid of appointed counsel, Bailey appealed the dismissal of his post-conviction petition. He argued that the circuit court erred in granting the State's motion to dismiss his post-conviction petition for two reasons. First, Bailey argued that his trial counsel provided ineffective assistance by (a) conceding his guilt and (b) stipulating to the admission of the 911 tape. Second, Bailey argued that his appellate counsel failed to assert that his trial counsel had provided ineffective assistance regarding the 911 tape.

---

        result of mutual combat with the victim which that is all the evidence that is here. Which if it was cold-blooded there would be one stab wound at the most and that would have been the case. And there is not a scintilla of evidence to rebut that.
        Every single piece of physical evidence corroborates one heck of a battle, initiated by the victim. It was not by the Defendant. It does not exonerate him. It is not self defense. He has never said he should be exonerated in this case. But it is a mitigating factor, Judge, that makes this not first but second degree murder.

*Id.* at L52–53.

The appellate court affirmed the dismissal of Bailey's post-conviction petition. It held that Bailey's trial counsel had not conceded Bailey's guilt as to first-degree murder but, rather, pursued a reasonable strategy of arguing that the first-degree murder charge should be mitigated to second-degree murder based on a "heat of passion" mutual-combat theory that was consistent with the evidence. The appellate court also rejected Bailey's contention that his trial counsel should have instead pursued a theory of second-degree murder based on self-defense. The court explained that under a self-defense theory, the use of deadly force is not justified where the victim has been disarmed, and Bailey testified that he had disarmed Lenorris before stabbing her nine times.

With regard to the 911 tape, the appellate court rejected Bailey's arguments that his trial and appellate counsel were ineffective for not challenging the accuracy of the recording where he said "you are going to die" and "I am going to f***ing jail for life." Because Bailey admitted on cross-examination that the 911 tape accurately reflected what he had said, a proper foundation existed as to the accuracy of the recording, and his trial and appellate counsel were not ineffective for failing to challenge the admissibility of his statements.

Bailey filed a petition for leave to appeal in the Illinois Supreme Court. He argued that leave to appeal should be granted to resolve whether an attorney provides presumptively prejudicial ineffective assistance when the attorney's theory of defense involves a concession of guilt to a lesser-included offense that conflicts with the defendant's testimony and the defendant vehemently objects to abandoning the theory of innocence. The Illinois Supreme Court denied the petition for leave to appeal.

Here, in his habeas petition, Bailey asserts two grounds for relief:

(1)       the circuit court erred in granting the State's motion to dismiss his post-conviction petition because Bailey had made a substantial showing that he was

denied effective assistance of counsel, where his trial attorney had stipulated to the admission of the 911 tape, which lacked proper foundation, and where his appellate counsel had failed to challenge trial counsel's ineffectiveness for so stipulating; and

(2) his trial counsel provided ineffective assistance when he abandoned a self-defense mitigation strategy and conceded Bailey's guilt without Bailey's prior knowledge or consent.

## **Discussion**

Before considering the merits of a habeas petition, the Court must ensure that the petitioner has exhausted all available remedies in state court and avoided procedural default. 28 U.S.C. § 2254(b)(1)(A); *see Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). A claim is procedurally defaulted if a habeas petitioner failed to fairly present his constitutional claims at each level of state court review. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *Momient-El v. DeTella*, 118 F.3d 535, 538 (7th Cir. 1997). "In determining whether an issue has been fairly presented to a state court, th[e] court has looked to whether the petitioner's argument '(1) rel[ied] on pertinent federal cases; (2) rel[ied] on state cases applying constitutional analysis to a similar factual situation; (3) assert[ed] the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege[d] a pattern of facts that is well within the mainstream of constitutional litigation.'" *Momient-El*, 118 F.3d at 538 (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1473-74 (7th Cir. 1992)). "[T]he presence of any one of these factors . . . does not automatically avoid a waiver; the court must consider the facts of each case." *Verdin*, 972 F.2d at 1474.

If a claim is procedurally defaulted, a petitioner must then establish that: (1) good cause exists for the default and actual prejudice was suffered as a result or (2) the default would lead to a "fundamental miscarriage of justice." *Morales v. Johnson*, 659 F.3d 588, 604 (7th Cir. 2011); *see*

9

*Bousley v. United States*, 523 U.S. 614, 620 (1998).

Respondent argues that Bailey's first habeas ground is procedurally defaulted because it was not presented to the Illinois Supreme Court. Respondent is correct. Nowhere in his petition for leave to appeal to the Illinois Supreme Court did Bailey assert an ineffective assistance of counsel claim based on the admission of the 911 tape. *See* Resp't's Ex. P, Pet. Leave Appeal, *People v. Bailey*, No. 112008. Furthermore, Bailey has not established good cause for the default or that actual prejudice or a fundamental miscarriage of justice would result due to the default. Accordingly, Bailey's first claim cannot be the basis of habeas relief.

In addition, Respondent argues that a portion of Bailey's second habeas claim is procedurally defaulted. Specifically, Respondent contends that, to the extent that Bailey's ineffective assistance of counsel claim relies on the two-part test of *Strickland*, this claim is defaulted because Bailey primarily relied on the presumption-of-prejudice standard discussed in *People v. Johnson*, 538 N.E.2d 1118 (Ill. 1989). However, because *Johnson* addresses the presumption-of-prejudice standard within the framework of *Strickland*, the Court finds that Bailey, in relying on *Johnson*, fairly presented his *Strickland* claim in one full round to the Illinois courts. *See id.* at 1123–25 (discussing the "*Strickland* presumption standard" and "examples given in . . . *Strickland* for when ineffectiveness was established without an inquiry into prejudice"); *see also Smith v. Brown*, 764 F.3d 790, 796 (7th Cir. 2014) (noting without holding that the *Strickland* Court's citation of *Cronic* "suggests that *Cronic* describes merely a subset within the universe of *Strickland* claims"). The Court thus proceeds to the merits of Bailey's second habeas claim.

Under AEDPA, a federal court "deferentially review[s] the decision of the last state court to address [petitioner's] claims on the merits." *Harris v. Hardy*, 680 F.3d 942, 948 (7th Cir. 2012). A

federal court may not grant habeas relief unless the state court's adjudication of a claim "was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

Under AEDPA, "ineffective assistance of counsel is a mixed question of law and fact reviewed de novo with a strong presumption that the attorney performed effectively." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). To succeed as to this claim, Bailey must demonstrate that his trial attorney's performance "fell below an objective standard of reasonableness" and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 688, 694. Prejudice is presumed where there is a "complete denial of counsel," where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or where outside circumstances prevent effectiveness. *United States v. Cronic*, 466 U.S. 648, 659–60 (1984).

Here, the Illinois appellate court's adjudication of Bailey's ineffective assistance claim was not contrary to the Supreme Court's decision in *Strickland* or *Cronic*. "A state court's decision is 'contrary to' federal law if it applies the wrong standard or 'decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Morgan v. Calderone*, 355 Fed. App'x 53, 55 (7th Cir. 2009) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). Bailey does not contend the Illinois appellate court applied the wrong standard, nor does he point to any Supreme Court case with materially indistinguishable facts that was decided differently. Accordingly, Bailey has not established that the Illinois appellate court's ruling was contrary to federal law.

Second, Bailey has not established that the Illinois appellate court's application of *Strickland* and *Cronic* was unreasonable. "The bar for establishing that a state court's application of the

11

*Strickland* standard was unreasonable is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen*, 555 F.3d at 600 (quotation omitted); *see Morgan v. Calderone*, 355 F. App'x 53, 55 (7th Cir. 2009) (reviewing state court's application of the *Cronic* standard and stating that "we will accept the application even if it is likely incorrect, so long as it is reasonable" (quotation omitted). Simply put, the court's decision must be "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

In this case, the Illinois appellate court reasonably concluded that Bailey's constitutional right to effective assistance of counsel was not violated under *Strickland* and *Cronic*. Bailey argued, as he does here, that his trial counsel's abandonment of a self-defense theory and concession of Bailey's guilt during closing statements were presumptively prejudicial. According to him, his testimony that he stabbed Lenorris in response to her twice threatening him with a knife supports a self-defense theory.

In evaluating this argument, the Illinois appellate court first properly outlined the elements of self-defense under Illinois law:

> (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable.

Resp't's Ex. O, *People v. Bailey*, No. 1-09-1855, at 6 (quoting *People v. Lee*, 821 N.E.2d 307, 311 (Ill. 2004)). The court then soundly reasoned that the self-defense theory was inapplicable because the evidence showed Bailey was the aggressor, the danger of harm was not imminent, and he could

not have reasonably believed a danger existed. In support, the court emphasized that Bailey had stabbed Lenorris nine times after he had disarmed her, he was seven inches taller and ninety pounds heavier than Lenorris, and he had been a boxer all of his life. Because the Illinois appellate court held that Bailey's testimony contradicted a self-defense theory, it rationally concluded that any failure to raise the theory during the trial had not prejudiced his defense.

Furthermore, the Illinois appellate court also reasonably determined that, in light of the overwhelming evidence that refuted any plausible claim of self-defense, Bailey's counsel made a reasonable strategic decision of pursuing a theory of second-degree murder by way of a "heat of passion" mutual combat theory. A "heat of passion" mutual combat occurs when "two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat." *See People v. Austin*, 549 N.E.2d 331, 334 (Ill. 1989). Bailey's counsel argued that Bailey was "acting under sudden, intense passion," that "[e]very single piece of physical evidence corroborate[d] one heck of a battle, initiated by the victim," and that the victim's death was "the result of mutual combat with the victim." Resp't's Ex. B, Trial Tr. at L52–53, J-133–37, K 66–68, L18–19. Although his counsel's efforts to establish a theory of second-degree murder were ultimately unsuccessful, Bailey has not shown it reasonably probable that the outcome of the trial would have been different had his trial counsel pursued a self-defense theory, rather than one based upon mutual-combat. In short, the appellate court reasonably applied *Strickland* and *Cronic*.

For these reasons, the Court holds that Bailey's first ground for habeas relief based on the 911 tape is procedurally defaulted and that Bailey has failed to establish cause for the default or that prejudice or a fundamental miscarriage of justice would result from the default. As for Bailey's remaining claim, the Court holds that the Illinois appellate court reasonably applied the *Strickland*

13

and *Cronic* standards when rejecting that argument. Therefore, the Court denies Bailey's petition for writ of habeas corpus.

## **Certificate of Appealability**

Under Rule 11 of the Rules Governing § 2254 Cases, this Court must consider whether it should issue a Certificate of Appealability when entering a final order adverse to a petitioner. Issuing a certificate is appropriate only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a court denies a petition on procedural grounds, a petitioner must show that both the procedural ruling and the underlying constitutional claim are debatable. *Id.* at 484.

That Bailey's habeas claim based on ineffective assistance of counsel is procedurally barred by his failure to present it before the Illinois Supreme Court during his post-conviction proceeding is not debatable. Moreover, given that the Illinois Appellate Court identified the *Strickland* and *Cronic* standards and properly analyzed the evidence to conclude that his trial counsel did not provide ineffective assistance, Bailey has not established that reasonable jurists would disagree with the Court's assessment of his *Strickland* and *Cronic* claims.

## **Conclusion**

For the reasons provided in this Memorandum Opinion and Order, the Court denies Bailey's petition for writ of habeas corpus [1] and declines to issue a Certificate of Appealability. This case is hereby terminated.

**SO ORDERED**                  **ENTER: 9/30/15**

                                        _____
                                        **JOHN Z. LEE**
                                        **U.S. District Judge**